ROBERT HROCH, DOING BUSINESS AS ASSOCIATED WRECKING CO., APPELLANT, V. FARMLAND INDUSTRIES, INC., A KANSAS CORPORATION, APPELLEE.

548 N.W.2d 367

Filed May 28, 1996.   No. A–95–332.

David Clark for appellant.

John R. Douglas, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

HANNON, SIEVERS, and MUES, Judges.

SIEVERS, Judge.
Robert Hroch, doing business as Associated Wrecking Co., appeals the district court order granting summary judgment to Farmland Industries, Inc. (Farmland). Hroch brought an action for tortious interference with a business relationship against Farmland after Borton, Inc., a general contractor, canceled Hroch's subcontract with Borton to perform certain demolition work on grain bins owned by Farmland.

## STATEMENT OF FACTS

Farmland hired a general contractor, Borton, to remove grain bins at a grain terminal elevator located near 34th and Vinton Streets in Omaha. Borton in turn subcontracted with Hroch. Borton and Hroch entered into an agreement on February 1, 1989, the terms of which included those in purchase order No. 89–0060, which was attached to the agreement and incorporated therein. The purchase order specified that Hroch was to remove the grain bins by cutting sections of concrete and lowering them to the ground and that at no time was Hroch or his employees to use a torch or electrical arc welder on the project. Borton's general contract with Farmland stated that neither Borton nor its subcontractor could use any torches or welders unless Farmland gave advance approval. The Borton–Hroch agreement also contains the following provision:

> Should the subcontractor at any time refuse or neglect to supply a sufficient number of properly skilled workmen, or of materials of the proper quality or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, and the contractor shall deem that such refusal, neglect or failure is sufficient grounds for such action, the contractor shall have the right to terminate the employment of the subcontractor for

the said work by written notice stating the effective date . . . .

The agreement further provides that should the contractor terminate the employment, it will not pay the subcontractor until the contractor finishes the work left undone by the subcontractor. Moreover, any further payments will be calculated by deducting any expenses and damages incurred by Borton from the unpaid amount.

According to the affidavit of Borton's purchasing agent, Bill Jennings, Borton orally notified Hroch on April 26, 1989, that the purchase order would be terminated. Farmland's answer to Hroch's petition alleged that Hroch was ordered to discontinue all demolition work and immediately vacate the jobsite because Hroch used an acetylene torch without permission, failed to use care regarding falling debris from the demolition work, and failed to work at a timely pace. Hroch testified in his deposition that sometime prior to noon on April 29, 1989, he received a phone call from Borton informing him that Borton was canceling his contract. Hroch testified that at noon on April 29, he received a purchase order form from Borton dated April 27, 1989, which was entitled "ADDITION TO P. O. NO. 89–0060" and stated, "PLEASE CANCEL THIS ORDER IN ITS ENTIRETY."

Hroch alleged in an affidavit in evidence that he received a letter of termination from Borton "on or after" May 3, 1989, which stated that his contract was terminated and that the letter was to serve as confirmation of the oral notification and the addition to the purchase order, dated April 27, 1989, canceling the contract. The letter stated that Hroch's contract was terminated because of (1) failure to conduct work at a timely pace, (2) disregard for instructions disallowing the use of an acetylene cutting torch on the premises, (3) failure to exercise care and caution during demolition work, (4) repeated complaints by Farmland about the progress of the work and the manner in which it was done, and (5) a demand by Farmland that Hroch be discharged for letting slabs of concrete " 'free fall,' " instead of lowering them to the ground by crane, as required under the contract.

On May 3, 1993, Hroch filed suit alleging that Farmland had tortiously interfered with his business contract with Borton. Farmland filed a motion for summary judgment on the basis that Hroch's petition was time barred as the statute of limitations had run prior to his filing the petition. The district court granted Farmland's motion and dismissed Hroch's petition. Hroch appeals.

## ASSIGNMENT OF ERROR

Hroch makes numerous assignments of error, all of which simply restate that the district court erred when it granted Farmland's motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *C.S.B. Co. v. Isham*, 249 Neb. 66, 541 N.W.2d 392 (1996). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

Hroch alleges the district court erred when it granted summary judgment on the basis that the statute of limitations had run prior to his filing of his petition. Hroch alleges that he was not damaged by Farmland's alleged tortious interference with his contractual relationship with Borton until after he received written confirmation of the termination on May 3, 1989. On appeal, Hroch argues that he did not receive written notice of the termination of his subcontract until May 3.

Hroch's own testimony, however, belies this argument. Hroch testified that he received written notice of termination of his contract on April 29, 1989, when he received the purchase order form, dated April 27, 1989, which stated that the purchase order for Hroch's services as a subcontractor would be

canceled. The question for this court then is to determine whether Hroch's cause of action accrued by April 29.

Hroch argues in his brief that his cause of action against Farmland could not accrue until sometime after May 3, 1989, because in the contract between Hroch and Borton there is a provision which states that if the contractor terminates the contract, the subcontractor will not be paid until the contractor finishes the work and expenses and damages can be determined. Because Hroch's exact damages could not be determined until Borton finished the project, Hroch argues, his action did not accrue until sometime after May 3.

■ In *L.J. Vontz Constr. Co. v. Department of Roads*, 232 Neb. 241, 440 N.W.2d 664 (1989), a contractor entered into a written construction contract with the Department of Roads (Department) on September 27, 1983, and the contractor began work on May 9, 1984, and continued until the contractor received a letter from the Department on July 23, in which the Department declared the contractor in default under the contract and ordered the contractor to remove its personnel and equipment from the project sites. The Department, however, continued to make payments for previous work done until April 1985. The contractor filed suit for breach of contract on February 3, 1987, and the court held that the statute of limitations barred his claim. The contractor argued that the cause of action did not accrue until his damages could be determined, which did not occur until after the final payment in April 1985. However, the *L.J. Vontz Constr. Co.* court held that the breach occurred when the contractor was ousted on July 23, 1984, from the project, and the payments made after Vontz' ouster merely affected the amount of damages. "The cause of action for a breach of contract accrues, and the statute of limitations begins to run, when the breach occurs." *Id.* at 246, 440 N.W.2d at 667.

In the same manner, an action for tortious interference with a business contract accrues when the harm from the alleged interference occurred, that is, when the breach of the business contract occurs. The Nebraska Supreme Court has held that the elements of tortious interference with a business relationship or expectation are

"(1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted."

*Koster v. P & P Enters.*, 248 Neb. 759, 764, 539 N.W.2d 274, 278–79 (1995).

■ The cause of action in this case is based upon Farmland's alleged interference, inducing Borton to breach its contract with Hroch. "A claim for damages based on intentional interference with contractual relations . . . accrues when the subject contract is breached, regardless of when the defendant supposedly induced the breach . . . ." *Kartiganer Assoc. v Town of New Windsor*, 108 A.D.2d 898, 899–900, 485 N.Y.S.2d 782, 784 (1985). "[I]nducing another to break a contract does not become a legal wrong upon which an action may be based until damage is suffered as a result, and that occurs only when the breach happens." *Fury Imports, Inc. v. Shakespeare Co.*, 625 F.2d 585, 588 (5th Cir. 1980), *cert. denied* 450 U.S. 921, 101 S. Ct. 1369, 67 L. Ed. 2d 349 (1981). See, also, *Hi–Lite Prod. v. American Home Products Corp.*, 11 F.3d 1402 (7th Cir. 1993); *Norris v. Grosvenor Marketing Ltd.*, 803 F.2d 1281 (2d Cir. 1986); *Blake v. Gilbert*, 702 P.2d 631 (Alaska 1985), *overruled on other grounds, Bibo v. Jeffrey's Restaurant*, 770 P.2d 290 (Alaska 1989).

■ Although Hroch does not directly argue that he was unable to discover his injuries until May 3, 1989, we take his emphasis upon the effect of the May 3 letter as an assertion that he did not discover he had a cause of action for tortious business interference until May 3, 1989, when he received Borton's letter, informing him that among other reasons, his subcontract was terminated at the behest of Farmland. Actions for tortious business interference must be filed within 4 years under Neb. Rev. Stat. § 25–207 (Reissue 1995). In *Omaha Paper Stock Co., Inc. v. Martin K. Eby Constr. Co., Inc.*, 193 Neb. 848, 230 N.W.2d 87 (1975), the plaintiff's warehouse was destroyed by fire on October 1, 1968, after its sprinkler system failed

because of an underground break at some unknown point at the waterline. In October 1971, plaintiff discovered that its waterline had ruptured due to negligent installation of a sewer. Plaintiff filed suit on March 7, 1973, against the construction company for negligent construction of the sewer. The court held that the § 25–207 statute of limitations runs when the injury actually occurs.

> It would seem reasonable to believe when plaintiff discovered that "no water flowed from the 8–inch water line to the automatic sprinkler systems" some attempt would have been made promptly to trace the cause. Plaintiff slept on whatever rights it may have had for 3 years. When the waterline was excavated for rebuilding purposes in October 1971, plaintiff discovered what it now claims was the cause of the break. This was well within the statutory period . . . . Still, plaintiff waited until March 7, 1973, or approximately 17 months thereafter, to file its petition herein.
>
> . . . .
>
> . . . Plaintiff knew October 1, 1968, that some of its fire damage was attributable to the fact that no water flowed from its waterline into its sprinkler system. . . .
>
> . . . An action for an injury to the rights of the plaintiff accrues under section 25–207, R. R. S. 1943, when the damage occurs and not when plaintiff discovers the cause of the damage.

*Id.* at 850–51, 230 N.W.2d at 89–90.

Section 25–207 does not provide for a discovery rule for tortious interference; neither has the Nebraska Supreme Court created a discovery rule exception to the general rule stated in *Omaha Paper Stock Co., Inc.* for cases of tortious interference. Just as in *Omaha Paper Stock Co., Inc.*, Hroch discovered well within the statutory period that Farmland had allegedly tortiously interfered with his contract with Borton. Hroch chose to sit on his right to file suit until 4 years had passed. If Hroch was damaged, it was when the breach occurred, which happened no later than April 29, 1989.

> The traditional rule is that the statute begins to run as soon as the action accrues, and the cause is said to accrue

when the aggrieved party has the right to institute and maintain a suit. In a contract action this means as soon as breach occurs, and in tort, as soon as the act or omission occurs. These rules would apply even though the plaintiff was then ignorant of the injury sustained or could not ascertain the amount of his damages.

*Grand Island School Dist. #2 v. Celotex Corp.*, 203 Neb. 559, 562–63, 279 N.W.2d 603, 606 (1979).

There is no genuine issue of material fact that the breach of Hroch's contract with Borton occurred later than April 29, 1989, and therefore Farmland's act of interference occurred by April 29 at the latest. The letter of May 3 was merely written formalization of what had already occurred and which was already known by Hroch, according to the admissions in his own evidence. Hroch's cause of action against Farmland for tortious interference accrued by April 29. The statute of limitations having run by April 29, 1993, the district court correctly granted summary judgment to Farmland.

AFFIRMED.