TIMOTHY CAVANAUGH, APPELLANT, V. CITY OF OMAHA, APPELLEE.
567 N.W.2d 592

Filed June 24, 1997.    No. A-96-491.

Thomas F. Dowd, of Dowd, Dowd & Fahey, for appellant.

Kent N. Whinnery, Deputy Omaha City Attorney, and Wendy E. Hahn for appellee.

IRWIN, SIEVERS, and MUES, Judges.

SIEVERS, Judge.

Timothy Cavanaugh, an Omaha police sergeant, sued the City of Omaha (City), claiming that the City breached the Collective Bargaining Agreement (CBA) between the City and its police union. The alleged breach was in administering a lieutenant's eligibility test 2 months later than required by the CBA, which allowed an otherwise ineligible sergeant to be certified for promotion to lieutenant ahead of Cavanaugh.

## FACTUAL BACKGROUND

The CBA is adopted as a city ordinance, and it requires the City to maintain an eligibility list of qualified candidates for promotion from sergeant to lieutenant in the Omaha Police Division. The list has a limited duration of 2 years and is com-

piled by testing eligible candidates. Before taking the test, in order to be placed on the eligibility list for actual promotion, a candidate must have at least 2 years' experience as a sergeant. The CBA mandates that eligibility testing be administered 60 days prior to the expiration of the current list and that notice of the eligibility tests be given 90 days before termination of the then current list.

Although the 60- and 90-day timeframes were specified in the CBA, Michael Mendenhall, an employee of the City's personnel department, who was the individual responsible for administering the eligibility tests, testified that between 1986 and 1989, "more often than not," the actual test schedule was "somewhat at variance" with the CBA guidelines. Due to concern that the eligibility tests were not being administered in a timely fashion, John Bober and Randy Hoke, presidents of the police and fire unions respectively, were contacted by Tom Marfisi, labor relations director for the City. Marfisi then contacted Mendenhall, who prepared a "new" 2-year testing schedule for all upcoming police and fire eligibility tests. During March and April 1989, Marfisi and Mendenhall discussed the new schedule with Bober and Hoke, and their reaction was "extremely positive." The schedule was reduced to writing on May 1, 1989, agreed to by Bober and Hoke, in an interoffice communication. This new schedule called for notice of the test for eligibility for promotion to police lieutenant to be posted on January 8, 1990, and administration of the test on April 13. This schedule was in direct conflict with the schedule contained in the CBA. The new schedule was never submitted to the membership of the police union for a majority vote, nor was it ever introduced to or passed by the Omaha City Council as a modification to the city ordinance.

According to the CBA, notice of the upcoming test should have been given as of November 7, 1989, 90 days before the eligibility list expired, and the test should have been administered on February 7, 1990, 60 days prior to expiration of the list. Instead, using the new schedule, notice was posted on January 8, and the test was given April 13. The list was not certified until July 30. Each eligibility list had to be "certified" in order for

promotions to be made. It was not until after July 30 that the initial promotions to the rank of lieutenant were made.

Cavanaugh had 2 years' experience as a sergeant as of February 7, 1990, the date the test was to be administered under the CBA timetable. Sgt. Donald Thorson did not have the required 2 years of service as a sergeant as of February 7 and would not have been eligible to sit for the test on that date. When the test was given 2 months later, on April 13, Thorson then had the requisite 2 years' experience and was deemed qualified to sit for the test. After the test, Thorson ranked second and Cavanaugh ranked eighth on the eligibility list. There was a total of eight promotions made from the certified lieutenant eligibility list prior to its expiration. Candidates ranking one through seven, including Thorson, and an affirmative action candidate, who ranked ninth and below Cavanaugh's eighth position, were promoted. Cavanaugh was not promoted.

## PROCEDURAL BACKGROUND

Cavanaugh filed suit against the City in the district court for Douglas County, Nebraska, on February 22, 1995, alleging that he was a third-party beneficiary of the CBA. Cavanaugh asserted the City breached the CBA by administering the eligibility test on April 13, 1990, and allowing an ineligible candidate, Thorson, to take the test on that date. Cavanaugh alleged that Thorson received a spot in the top seven, with the result that Thorson was promoted and Cavanaugh was not. The City answered, asserting three affirmative defenses: (1) The CBA had been adjusted by the May 1, 1989, interoffice communication; (2) Cavanaugh's claim was barred by the 5-year statute of limitations for suits on a breach of contract; and (3) collateral estoppel barred Cavanaugh's suit, as the same issue was already fully litigated in Paul Cook v. Omaha Police Department et al., a federal district court case docketed at CV 91-00348. The district court found against Cavanaugh on two grounds after trial: The CBA had been properly amended, thus making Thorson an eligible candidate for the test, and Cavanaugh's claim was barred by the 5-year statute of limitations. Cavanaugh now appeals to this court.

## ASSIGNMENTS OF ERROR

Cavanaugh asserts that the district court erred as a matter of law in finding that the CBA could be amended by discussions between the City's labor relations director and the police union's president without approving action by the union membership and the city council. He also assigns error in the district court's finding that his suit was barred by the statute of limitations.

## STANDARD OF REVIEW

In connection with questions of law, a reviewing court has an obligation to reach its own conclusion independent of those reached by the lower courts. *State v. Nissen*, 252 Neb. 51, 560 N.W.2d 157 (1997).

## ANALYSIS

*Modification of CBA.*

The City asserts that the CBA was properly amended as of May 1, 1989; that the administration of the eligibility test on April 13, 1990, was in accordance with the amendments to the schedule; and that Thorson, as a result, was eligible to sit for the test. We address this issue first, because if the City is correct, Cavanaugh simply has no lawsuit.

The record reveals four people were involved in the discussions about changing the time schedule for the eligibility tests: Mendenhall, Marfisi, Bober, and Hoke. The discussions were precipitated by a period of 3 or 4 years in which the eligibility tests were not given in accordance with the timeframes specified in the CBA. The result was the creation, by Mendenhall, of a completely new set of testing schedules. Although Bober was advised by the police union's executive board that he had no authority to make any changes to the CBA, the "agreement" between the above four people was set forth in the unsigned interoffice communication from Marfisi dated May 1, 1989, which is in evidence as exhibit 7. This memo included a new date, January 8, 1990, for posting notice of the next lieutenant eligibility test, and a new date, April 13, 1990, for administering the test.

Three witnesses testified about how the CBA could be changed: Gary Becerra, president of the Omaha police union at

the time of trial; Lt. David Friend, a member of the union executive board during the late eighties and early nineties; and David Skinner, vice president of the union during the aforementioned time. The following testimony from Becerra succinctly defines this procedure:

Q. Does the union's president, such as yourself or John Bober when he was president, have authority on your own initiative to modify or change any of the terms or conditions of that collective bargaining agreement?

A. No.

Q. What action is required by the union in order to change or modify in any respect the language of that collective bargaining agreement?

A. It would first have to pass the negotiation committee, the executive board. It would have to be taken up to them. It wouldn't have to pass. The final requirement, it would have to pass a majority vote of the membership of the union.

Q. So as I understand it then, Lieutenant, before any change in the language could be made by the union, the matter had to be first presented to the unions executive board for its input?

A. Yes.

Q. And after its input, whatever that may be, whether for or against, it then must go to the membership if it's processed that far?

A. Yes.

Q. And a majority vote of the membership voting would be required in order to change it?

A. Yes, sir.

Q. Is it your understanding that the collective bargaining agreement is adopted as an ordinance of the City of Omaha?

A. Yes, it is.

Q. So after the union membership then would approve a change, would the next step be to have it submitted to the City Council for action?

A. Absolutely.

The other two witnesses agreed completely with Becerra's description of the procedure, except for a minor dispute as to whether the executive board must approve a change before the membership of the police union votes on it. That dispute is not of consequence in the resolution of this appeal.

On the basis of this testimony, Cavanaugh asserts the interoffice communication of May 1, 1989, could not have amended the CBA timetables because the evidence shows that the union executive board was never presented with the new schedule, that a majority of the union membership never voted on it, and that the city council never approved it. The district court ruled that the memorandum was "a proper amendment of the CBA," apparently because "both sides knew." This conclusion is clearly wrong because it ignores the evidence that those involved in creating the new schedule knew the old schedule was part of the CBA, that a specific procedure was required to amend the CBA, and that they did not comply with at least two very material procedural steps for amendment of the CBA. There is no dispute that the police union members never voted on the amendment, nor did the city council ever approve the new schedule. Thus, if there was an amendment, it could not be on the basis of the interoffice communication, which does not follow the requirements contained within the CBA for its amendment.

The City, nevertheless, argues that a modification may be implied from conduct and the acts of one party in accordance with the terms of a change proposed by another to modify an agreement. See *Atokad Ag. & Racing v. Governors of Knts. of Ak-Sar-Ben*, 237 Neb. 317, 466 N.W.2d 73 (1991), *overruled on other grounds, Eccleston v. Chait*, 241 Neb. 961, 492 N.W.2d 860 (1992). The City also asserts that when a contract requires interpretation, the " 'best, if not controlling' " evidence of intent is the parties' interpretation of agreement which should be given deference. Brief for appellee at 14. See *Nowak v. Burke Energy Corp.*, 227 Neb. 463, 418 N.W.2d 236 (1988). One minor difficulty with the evidential presentation of this case is that the CBA was not introduced in evidence, so we do not have it to review. But we review the case as the parties tried it. The evidence, via stipulation, establishes the "old schedule," and the

evidence is undisputed, via oral testimony, that the CBA contains its own protocol for amendment. We have detailed that protocol by quoting at length from Becerra's testimony. That protocol was not followed.

We are unwilling to embrace the notion advanced by the City that the mandatory participation in the amendment process of the CBA by the rank and file of the police union as well as the city council is rendered meaningless by how four people agreed that the CBA should read. It is clear that the time schedule impacts who can be eligible to sit for the test, which in turn impacts who is ultimately promoted. The CBA gives the union rank and file a vote in the amendment process, and even though the union president and two city employees might agree on a new schedule, their agreement does not negate the contractually guaranteed right of the union membership and the city council to be heard on the question of whether the CBA should be amended. We think the matter of intent is not significant. Bober, Hoke, Marfisi, and Mendenhall obviously intended to amend the CBA, but they simply did not have the power to amend it on their own. As far as interpretation by conduct is concerned, there is no evidence whatsoever of consent to past violations of the CBA by either the rank and file of the police union or the city council so as to elevate past violations of the schedule to the level of amendment by conduct. The district court erred in holding that the CBA had been properly amended. As a result, we now turn to the statute of limitations issue, which we, of course, decide under the "old" CBA schedule.

*Statute of Limitations.*

The parties agree that this action is governed by Neb. Rev. Stat. § 25-205 (Reissue 1995), which provides that an action upon a written agreement or contract "can only be brought within five years." The point at which a statute of limitations commences to run must be determined from the facts of each case. *Gordon v. Connell*, 249 Neb. 769, 545 N.W.2d 722 (1996). A cause of action accrues and the statute of limitations begins to run when the aggrieved party has the right to institute and maintain a suit. *Upah v. Ancona Bros. Co.*, 246 Neb. 585, 521 N.W.2d 895 (1994). Generally, this is true even though the

plaintiff may be ignorant of the existence of the cause of action. *Id.* Cavanaugh filed suit on February 22, 1995, alleging a breach of the CBA on April 13, 1990, the date the test was given and at which an ineligible sergeant, Thorson, was allowed to sit. Therefore, the issue is whether prior to February 22, 1990, Cavanaugh's cause of action for breach of the CBA alleged in his petition had accrued. If so, his action is barred by § 25-205. If not, we must reverse the judgment of the district court.

Cavanaugh argues that his cause of action did not arise until the city certified Thorson, an ineligible candidate, and placed him on the lieutenant's eligibility list as of July 30, 1990. We do not entirely accept this view. Cavanaugh asserts that he sustained no "injury" until July 30, at the earliest, because his chance to be promoted was not adversely affected by the failure to follow the old CBA schedule until the list was certified and Thorson was on it. The City maintains that if we find that there was a breach of the CBA, then it occurred when the City's mandatory duties under the old CBA were not performed. The City argues that the breach was the failure to post the notice of testing on November 7, 1989, which bars an action filed more than 5 years thereafter on February 22, 1995. We do not entirely accept this view either. The CBA required posting on November 7, 1989, which was not done, and thus there was a breach on that date. But there are also other breaches of the CBA: The notice was posted late on January 8, 1990; the test was not given on February 7, 1990; and it was given later, on April 13, 1990. All of these violations of the CBA are also breaches of the contract. The question is whether Cavanaugh's cause of action accrued when the City initially breached the CBA by failing to post notice on November 7, 1989, as required by the "old" schedule in the CBA, or whether each breach gives rise to a separate cause of action, each having its own accrual date for statute of limitations purposes. If there are separate causes of action for each breach, then as a practical matter, the real question becomes in which cause of action can Cavanaugh prove that the alleged breach has caused him damage.

█ The Supreme Court in *L.J. Vontz Constr. Co. v. Department of Roads*, 232 Neb. 241, 440 N.W.2d 664 (1989), held that a cause of action for a breach of contract accrues and

the statute of limitations begins to run when the breach occurs, even though the nature and extent of damages may not be known. See *Grand Island School Dist. #2 v. Celotex Corp.*, 203 Neb. 559, 279 N.W.2d 603 (1979) (party to contract has right to institute suit for breach of contract when breach occurs). This court has held that a cause of action for tortious interference with a contract accrues when the subject contract is breached, regardless of when the defendant supposedly induced the breach. *Hroch v. Farmland Indus.*, 4 Neb. App. 709, 548 N.W.2d 367 (1996). We held that this is the rule even though the plaintiff is ignorant of the injury sustained or cannot ascertain the amount of damages. *Id.*

The Nebraska Supreme Court has consistently used the "occurrence rule," measuring the statute of limitations from the time of the breach in contract cases and from the time of the act or omission in tort cases. *Rosnick v. Marks*, 218 Neb. 499, 357 N.W.2d 186 (1984). The Supreme Court recently reaffirmed its commitment to the occurrence rule in *Gordon v. Connell*, 249 Neb. 769, 545 N.W.2d 722 (1996). Thus, the fact that Cavanaugh does not know until much later whether he will or will not be promoted is a matter of the nature and extent of damages and does not prevent the accrual of a cause of action under the occurrence rule. The breach is what begins the running of the statute of limitations under Nebraska law.

As we have indicated, this case involves a series of breaches of the time schedule of the CBA. Generally, suit can be filed on any breach, and each breach has its own statute of limitations. It has been said that an action lies at once for failure to render an installment performance as promised and a second action lies for a similar failure thereafter, but if no action is brought until after there have been two failures, only one action can thereafter be maintained for the two. 4 Arthur Corbin, Corbin on Contracts § 950 (1951). Corbin also states that where a contract requires a series of performances, there can be a series of breaches when there is a failure to render the performances as required.

The Court of Special Appeals of Maryland in *Singer Co. v. BG&E*, 79 Md. App. 461, 558 A.2d 419 (1989), considered the notion of a series of breaches of contract in the context of deter-

mining when the state's 3-year statute of limitations on claims by customers against a utility for a breach of contractual obligation to supply electrical power began running. The plaintiff's business involved the operation of computers which required a continuous supply of electricity. There was a series of power outages and thus a failure to supply the needed power which stretched over a 3-year period of time. The court's opinion details each power outage, the time thereof, and the duration. On appeal, the plaintiff took issue with the trial court's determination that the common-law contract action accrued immediately after one of the first power interruptions and thus the action, including any claim for damages from the subsequent breaches, was time barred. The plaintiff argued that the power company had "a continuing contractual obligation to supply it with electricity [and] that each power outage at its facility constituted a separate and distinct breach of BG & E's contractual obligation [to supply the plaintiff power]." *Id.* at 472, 558 A.2d at 424. The plaintiff thus argued that each successive breach commenced a separate cause of action for statute of limitations purposes.

The Maryland court reviewed appellate literature on the scenario of sequential breaches and concluded:

> [W]here a contract provides for continuing performance over a period of time, each successive breach of that obligation begins the running of the statute of limitations anew, with the result being that accrual occurs continuously and a plaintiff may assert claims for damages occurring within the statutory period of limitations.

*Id.* at 475, 558 A.2d at 426. Thus, in *Singer Co.*, the appellate court determined that the trial court had erred in determining that the claim was barred by the statute of limitations as not brought within 3 years of the initial interruptions.

Applying this rationale to the instant case, the City has a continuing duty to undertake certain steps in the promotional process in a sequential fashion. The evidence shows that there was a series of breaches of the CBA occurring in a sequential fashion: failing to post notice; posting notice late; failing to give the test on time; and giving the test on April 13, 1990, at which time Thorson was allowed to sit. The analysis could be extended to

say that there were breaches occurring thereafter when Thorson was promoted and Cavanaugh was not. The concurrence of breach and determinable damages is not required to start the running of the statute of limitations. It is apparent that the City could have mitigated or completely remediated damages from any of the breaches by promoting Cavanaugh instead of Thorson, thus the necessity for fixed damages before the cause of action accrues is essentially an unworkable and awkward notion. The reality of the matter is that an injured party has 5 years from breach until he or she must file suit in which to determine whether damage has been sustained and, if so, the extent thereof. In conclusion, the statute of limitations for the breach occurring on April 13, when the test was given late and Thorson was allowed to sit, began running on April 13 and Cavanaugh's suit, filed within 5 years of that date, is not barred by the statute of limitations.

*Rule-of-Three.*

The City argues that even if we disagree with the district court's finding that the statute of limitations had run on Cavanaugh's claim and that the CBA had been amended, the district court's decision still must be upheld because of the rule-of-three. The evidence in this regard is that when there is a vacancy for promotion, then the top three names from the eligibility list are referred for promotion, together with any affirmative action candidates. There is also evidence that under the so-called rule-of-three, the first-ranked person vying for the position was not always promoted. The parties stipulated that on the eligibility list generated from the testing of April 13, 1990, Cavanaugh ranked eighth and Thorson second and that there were eight promotions to the rank of lieutenant during the lifetime of the list. They further agreed that the officers ranked one through seven on the list, including Thorson, were promoted as was the ninth-ranked person, who was promoted in accordance with the City's affirmative action program. Finally, they stipulated that Cavanaugh was not promoted, and the last promotion before the list expired was given to the officer who ranked seventh.

Given that eight individuals were promoted from this particular eligibility list, including one affirmative action candi-

date, the chief of police was asked whether he would have had any reason not to have promoted Cavanaugh. His answer was in the negative. The district court made no finding as to whether Cavanaugh would have been promoted had Thorson not been on the list. This is obviously the crux of the case as to damages. In other words, did the breach of contract which allowed Thorson to sit for the late test cause Cavanaugh not to be promoted? See *Lange Indus. v. Hallam Grain Co.*, 244 Neb. 465, 507 N.W.2d 465 (1993) (claimant's burden of proof is to show breach of contract complained of was proximate cause of alleged damages).

Therefore, we remand this matter to the district court for a determination of whether there is a causal relationship between the damage asserted, the failure to be promoted, and the breach relied upon, and the administration of the test on April 13, 1990, at which an ineligible candidate, Thorson, was allowed to sit. Cavanaugh prays for "an accounting . . . for all wages lost . . . as a result of the Defendant's failure to promote him to the rank of Lieutenant" and that he be placed on the "appropriate pay step level with seniority and other benefits retroactive to August 5, 1990." Thus, factual findings must be made by the district court on the matter of proximate cause between breach and damages, and if proximate cause is found to exist, then the court must make further factual findings on the nature and extent of Cavanaugh's damages and the relief to be accorded.

REVERSED AND REMANDED WITH DIRECTIONS.