DAVID H. ANDERSEN, APPELLANT, V.
A.M.W., INC., APPELLEE.
665 N.W.2d 1

Filed July 3, 2003.   No. S-02-756.

John A. Sellers, of Gilroy & Sellers, L.L.P., for appellant.

David E. Copple and David J. Feeney, of Copple, Rockey & McGough, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

David H. Andersen brought this breach of contract action against A.M.W., Inc. (AMW), alleging that AMW had failed to pay commissions due Andersen. A bifurcated trial was held on the issue of whether the action was barred by the applicable statute of limitations. The trial court found that a cause of action accrued when Andersen did not receive his first commission

payment (sometime after July 31, 1992) and that he had a right to institute suit when this breach occurred. The court concluded that the commencement of suit on January 12, 2001, was beyond the 5-year statute of limitations and that, therefore, the action was time barred. The court dismissed Andersen's petition, and he timely appealed.

## SCOPE OF REVIEW

When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Morello v. Land Reutil. Comm. of Cty. of Douglas*, 265 Neb. 735, 659 N.W.2d 310 (2003).

## FACTS

On or about August 9, 1991, Andersen entered into an agency agreement with AMW. The agreement provided that AMW would pay commissions to Andersen at specified rates based on insurance policies sold by Andersen. Andersen would earn an initial commission when the first premium was paid on an insurance policy that had been sold by him. A renewal commission would be earned each time an insured made subsequent premium payments, which could be monthly, quarterly, semiannually, or annually. AMW was to pay these commissions 30 to 60 days after it received the premiums from the insured.

Under the terms of the agreement, Andersen's right to receive commissions was vested for the duration of his life. Upon Andersen's death, the commissions were payable to his wife for 24 months. The agreement could be terminated for good cause, which included "[t]he loss, termination or revocation of [Andersen's insurance] license." An amendment to the agreement provided as follows:

> Commissions provided for in this Agreement shall be paid for as long as the policy remains in force . . . . Should you at any time either before or after termination of this Agreement wrongfully withhold funds due an applicant, policyholder or the Companies, no renewal commissions shall be payable under this Agreement.

> After this Agreement terminates we will not pay commissions after any calendar year in which the total commission owed or paid to you is less than $200.00.

Andersen was notified by letter dated September 15, 1992, that the agency agreement had been terminated effective July 31 of that year. AMW explained that the agreement was terminated because Andersen had not renewed his license.

The record includes Internal Revenue Service forms 1099 for 1992 to 1997 which indicate nonemployee compensation from AMW to Andersen in the total amount of $177,729.63. However, Andersen did not receive any commission payments from AMW after June 29, 1992.

On January 12, 2001, Andersen filed a petition against AMW, alleging breach of contract for unpaid commissions. Andersen contended that AMW breached its contract and continued to be in breach of contract by failing to pay Andersen his vested commissions and amounts in what he described as his " 'hold account.' " Andersen alleged that the breach of contract began on April 1, 1992, and continued through the time the petition was filed.

After a bifurcated trial on the statute of limitations, the trial court held that the action was time barred and dismissed the petition. The court concluded that Andersen had the right to commence suit when the breach first occurred (sometime between July 31, 1992, and 1994) and that, therefore, the commencement of suit on January 12, 2001, was beyond the 5-year statute of limitations. Andersen appeals.

## ASSIGNMENTS OF ERROR

Andersen claims that the trial court erred (1) by barring all of his claims, because each sequential breach by AMW tolled the 5-year statute of limitations, and (2) by barring those claims which arose within 5 years prior to the commencement of the action.

## ANALYSIS

The issue is whether Andersen's cause of action for breach of contract is time barred by the applicable statute of limitations. Neb. Rev. Stat. § 25-205(1) (Cum. Supp. 2002) provides in part: "Except as provided in subsection (2) of this section, an action upon a specialty, or any agreement, contract, or promise in writing, or foreign judgment, can only be brought within five years."

The trial court found that the contract was terminated on or about September 15, 1992, effective July 31 of that year, and that

no commissions were paid by AMW to Andersen after June 29. The court determined that Andersen had the right to institute his suit when the first breach occurred, which the court found was when Andersen did not receive his first commission payment, sometime between July 31, 1992, and 1994. It concluded that the commencement of suit on January 12, 2001, was beyond the 5-year period required by § 25-205(1) and that, therefore, the action was time barred.

The point at which a statute of limitations begins to run must be determined from the facts of each case, and the decision of the trial court on the issue of the statute of limitations normally will not be set aside by an appellate court unless clearly wrong. *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002). The period of limitations begins to run upon the violation of a legal right, that is, when the aggrieved party has the right to institute and maintain suit. *Egan v. Stoler*, 265 Neb. 1, 653 N.W.2d 855 (2002). This case presents the question of whether each failure of AMW to pay a commission constituted an independent cause of action or whether there was one cause of action which accrued upon the failure of AMW to pay the first commission after termination of the agreement between the parties.

Andersen argues that the agreement created a continuing obligation on the part of AMW to pay commissions to him during his lifetime. He asserts that each time AMW failed to pay a commission, a breach of the agreement occurred. He claims that because the agreement was a continuing obligation, the statute of limitations began anew with each successive breach and that, therefore, he is entitled to all of the commissions that were not paid.

In the alternative, Andersen asserts that each breach of the agreement created a new cause of action and that he is entitled to recover all commissions not paid after January 12, 1996, which would be within 5 years of the time that the action was commenced on January 12, 2001.

AMW argues that Andersen failed to meet his burden of proof to allege facts that tolled the statute of limitations. AMW asserts that Andersen's cause of action is barred because it accrued when Andersen first had the right to institute and maintain a lawsuit. AMW claims that the cause of action accrued on July 31, 1992, which was the effective date for termination of the agreement,

and that it became incumbent upon Andersen to file suit within 5 years of that date. Also, AMW claims that the cause of action accrued on the first date when a commission was due and was not paid by AMW. It argues that a new liability is not created day to day or month to month simply because the liability to an agent is to be discharged by monthly payments for the remainder of the life of the agent. AMW asserts that its actions following termination of the agreement were consistent with or natural consequences of the termination.

In the alternative, AMW argues that the statute of limitations bars all of Andersen's claims which accrued more than 5 years prior to commencement of the action. It argues that when an obligation is payable via installments, the statute of limitations runs against each installment individually from the time it becomes due.

The trial court relied on *Cavanaugh v. City of Omaha*, 254 Neb. 897, 580 N.W.2d 541 (1998), in arriving at its decision to dismiss Andersen's petition. In *Cavanaugh*, the city was required by ordinance to maintain an eligibility list of candidates qualified for promotion within the Omaha Police Division. The eligibility list for promotion to the rank of lieutenant was to expire April 7, 1990. The collective bargaining agreement (CBA) between the city and its police union required that the examination for establishment of a new list be commenced on or before February 7 and that notice of the examination be posted on November 7, 1989. The city failed to comply with the terms of the CBA when it posted notice of the examination on January 8, 1990, and administered the examination on April 13. As a result of the city's actions, an otherwise ineligible sergeant was allowed to take the lieutenant examination and ultimately was promoted. Cavanaugh also took the examination but was not promoted.

On February 22, 1995, Cavanaugh commenced a breach of contract action against the city. The district court determined that even if the CBA was breached, the breaches occurred (1) on November 7, 1989, when notice was to be posted pursuant to the CBA; (2) on February 7, 1990, when the examination was to be administered pursuant to the CBA; and (3) on January 8, 1990, when the notice was actually posted. The district court concluded

that Cavanaugh's action was barred by the applicable 5-year statute of limitations.

The Nebraska Court of Appeals reversed, holding that the district court failed to identify a breach on April 13, 1990, which brought the action within the limitations period. See *Cavanaugh v. City of Omaha*, 5 Neb. App. 827, 567 N.W.2d 592 (1997). The Court of Appeals relied upon *Singer Co. v. BG&E*, 79 Md. App. 461, 558 A.2d 419 (1989), in which a utility company had a contractual obligation to supply continuous electricity to its customer. In that case, the court found that each time there was a power outage, the utility company breached its obligation and a new statute of limitations began to run. The Court of Appeals compared the CBA to the utility company's contract for continuing performance over a period of time where each successive breach began the running of the statute of limitations. The Court of Appeals found that not only had the breaches of the CBA occurred at the three points in time identified by the district court, but that a breach also occurred on April 13, 1990, when the examination was actually administered and an otherwise ineligible sergeant was allowed to sit for the examination.

We reversed the decision of the Court of Appeals, concluding that it had incorrectly applied the rule for determining when a cause of action for breach of contract occurred. We stated: "While we do not pass on the correctness of the *Singer Co.* decision, we find that the Court of Appeals misapplied the rationale in *Singer Co.* to the facts of the instant case in its application of the occurrence rule." *Cavanaugh v. City of Omaha*, 254 Neb. 897, 902, 580 N.W.2d 541, 545 (1998). We explained:

[I]t is error to characterize [the City's] subsequent acts or omissions as separate breaches, each beginning a new statute of limitations period. This is not a case like *Singer Co., supra*, where there was an ongoing, contractual duty to supply electricity that was subject to sequential breaches each time there was a power outage. Instead, the City had one duty that is at issue in this case, the administration of the examination in conformance with the specific terms of the CBA. The City failed to perform that duty when, on November 7, 19[89], it did not post notice of the examination as required. The actions that followed, including the

> late examination administration and the admission of [the otherwise ineligible sergeant], were natural consequences of the November 7 breach.

*Cavanaugh*, 254 Neb. at 902-03, 580 N.W.2d at 545. We held that it was the nonperformance of a specific affirmative duty contained in the CBA which constituted the breach in *Cavanaugh*, not the actions taken by the city subsequent to the breach and as a result thereof.

When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Morello v. Land Reutil. Comm. of Cty. of Douglas*, 265 Neb. 735, 659 N.W.2d 310 (2003). Although the trial court did not err when it determined that the statute of limitations began to run when AMW first failed to pay the commissions, it erred as a matter of law when it concluded that the statute of limitations barred a suit to collect those commissions which accrued within 5 years of commencement of the action. The court's reliance upon *Cavanaugh* was misplaced.

The case at bar involves an ongoing contractual obligation. The agreement between Andersen and AMW provided that AMW would pay Andersen commissions for his lifetime and would pay such commissions to his spouse for 24 months after his death. Each time periodic premiums were paid on the policies originally sold by Andersen, AMW was obligated to pay him a commission. The record contains Internal Revenue Service forms 1099 from 1992 to 1997 indicating that nonemployee compensation had accrued during that time in the amount of $177,729.63.

■ Unlike *Cavanaugh*, the case before us does not involve wrongful actions or damages flowing from a single breach of the contract. Each time AMW failed to pay Andersen, a separate breach of the agreement occurred. Therefore, a separate cause of action accrued at the time of each breach. AMW's obligation under the agreement is similar to an obligation payable by installments. Where an obligation is payable by installments, the statute of limitations runs against each installment individually from the time it becomes due. See *National Bank of Commerce v. Ham*, 256 Neb. 679, 592 N.W.2d 477 (1999). Each time AMW failed to pay Andersen a commission, the statute of limitations began to run as to that individual commission.

Contrary to Andersen's assertion, however, he is not entitled to recover all commissions that AMW has failed to pay since 1992. Andersen can recover only such commissions that were owed to him within the 5-year period prior to the time this suit was commenced. We conclude that Andersen's breach of contract action was time barred for any alleged breaches of contract which accrued before January 12, 1996. Those breaches which accrued on or after January 12 are not time barred by the applicable statute of limitations.

## CONCLUSION

Termination of the contract between Andersen and AMW did not negate AMW's obligation to pay commissions. AMW's subsequent failure to make payments to Andersen each time a commission accrued constituted breaches of the contract for which Andersen had a right to bring suit.

For the reasons stated herein, we determine that the trial court erred by barring Andersen's claims which arose within 5 years prior to the commencement of this action on January 12, 2001. We therefore reverse the judgment and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.