Albert C. DUELL and Mary Hazel
Duell, Plaintiffs–Appellants,

v.

UNITED BANK OF PUEBLO, N.A., n/k/a
Norwest Bank Pueblo, N.A.,
Defendant–Appellee.

No. 93CA0804.

Colorado Court of Appeals,
Div. C.

June 16, 1994.

Rehearing Denied Aug. 18, 1994.

Certiorari Denied April 3, 1995.

Gary S. Cohen, Denver, for plaintiffs-appellants.

Holme Roberts & Owen, L.L.C., Katherine J. Peck, Walter H. Sargent, Denver, for defendant-appellee.

Opinion by Judge CRISWELL.

Plaintiffs, Albert C. and Mary H. Duell, appeal from the judgment of the trial court dismissing the claims asserted by them against defendant, United Bank of Pueblo, N.A., n/k/a Norwest Bank Pueblo, N.A. (Norwest). They argue that the trial court mistakenly determined that their claims were time-barred by the pertinent statutes of limitation and that no legal claim for damages for "economic duress" is cognizable under Colorado law. We disagree and, therefore, affirm the judgment appealed from.

Plaintiff's complaint, as amended, contained some seven claims for relief, all of which were based upon common factual allegations. These allegations asserted that plaintiffs, as the owners of a large parcel of land which they desired to develop for commercial uses, borrowed funds from Norwest for various specific developments. As security for these various loans, plaintiffs gave to Norwest a deed of trust upon the realty involved and pledged the equipment, inventory, and other assets of an existing business located on the parcel. In addition, they also pledged shares of corporate stock owned by them as further security.

According to plaintiffs' allegations, Norwest agents orally represented that Norwest wanted to enter into a long-term relationship with plaintiffs and, to that end, represented that certain short-term obligations would be renewed when they became due. In addition, plaintiffs averred that these agents told them that the corporate stock that had been pledged as security would not be sold by Norwest until all other security had been depleted and then only with plaintiffs' consent. However, in 1984, Norwest sold this corporate stock, allegedly without seeking to sell any of the other secured items and without plaintiffs' consent.

Sometime thereafter, when several of the promissory notes were in default, plaintiffs were notified by the local governmental land use authority that they had failed to subdivide the parcel in accordance with the applicable state statutes and local regulations, and as a result, they would not be able to sell any portions of their land without having a subdivision plat approved. At about the same time, plaintiffs and Norwest entered into a loan workout agreement. Under this agreement, the payment dates of three notes that were in default in the amount of approximately $325,000 were extended to a date in 1988, Norwest agreed that plaintiffs could sell the land and other secured assets without paying the notes secured by such property in full (subject to Norwest's approval of any specific sale), and the proceeds of each sale were to be divided between Norwest and plaintiffs.

Although plaintiffs were represented by counsel during the negotiations leading to the execution of this agreement, and while that agreement makes no reference to the subject, plaintiffs allege that, at the time this agreement was executed, a Norwest representative orally promised to pay any costs associated with the preparation and approval of a subdivision plat so that the realty could be sold.

While this workout agreement was in effect, plaintiffs received an offer to trade all of their interest in the land for $900,000 in capital debenture bonds issued by a small public corporation and 40,000 shares of capital stock in another corporation. From the document evidencing this offer, however, it appears that this transaction contemplated that plaintiffs would receive all of the consideration being offered and that the land would continue to be subject to all of Norwest's existing encumbrances. In any event, Norwest refused to approve this sale. In addition, plaintiffs allege that Norwest refused to advance any funds so that the land could be properly subdivided.

In January 1990, the three notes that were the subject of the workout agreement, together with a fourth note, were still unpaid.

Norwest commenced foreclosure proceedings upon the land before the public trustee, and plaintiffs responded by filing a petition with the federal bankruptcy court, under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101, et seq. (1988), and obtaining a stay of the foreclosure proceedings.

While plaintiffs' bankruptcy proceedings were pending, they applied to the bankruptcy court as debtors-in-possession under Chapter 11 for permission to engage counsel to pursue claims against Norwest. Norwest opposed this application on several grounds, asserting that plaintiffs' bankruptcy petition had been filed in bad faith and solely to frustrate Norwest's collection attempts, that plaintiffs had failed to comply with previous orders of the bankruptcy court, that any business that might be subject to the Chapter 11 proceeding was not capable of rehabilitation, and that the assertion of any claim against Norwest would be frivolous.

After an evidentiary hearing, the bankruptcy court concluded that plaintiffs had failed to provide adequate protection to Norwest and that there was no reasonable prospect of rehabilitating plaintiffs' business. Consequently, it denied plaintiffs' request to engage counsel and vacated the stay against Norwest's foreclosure, which was allowed to proceed. Ultimately, in January 1991, plaintiffs' Chapter 11 petition before the bankruptcy court was dismissed at their request.

Plaintiffs filed their initial complaint with the trial court here in September 1991. Based upon the foregoing allegations, they asserted that Norwest's conduct: (1) violated the duty of good faith that it owed to plaintiffs; (2) breached a fiduciary duty owed to them; (3) involved fraudulent misrepresentations; or (4) fraudulent concealment; or (5) negligent misrepresentations; (6) intentionally interfered with a prospective advantage that plaintiffs enjoyed; and (7) wrongfully coerced plaintiffs to enter into the workout agreement.

However, each of plaintiffs' claims, with one exception, asserted that Norwest's conduct resulted in causing plaintiffs the *same* damage. Thus, except for the claim for intentional interference with prospective advantage, each of the other six claims affirma-tively alleged that the conduct described in such claim resulted in: (1) the loss of the corporate stock sold by Norwest, (2) the loss of plaintiffs' equity in their realty, (3) damage to their credit rating, and (4) emotional distress and suffering. The claim for intentional interference affirmatively alleged all of the foregoing damages, except for the loss of the corporate stock.

In its answer to plaintiffs' complaint, Norwest asserted four counterclaims, each based upon an unpaid promissory note executed by plaintiffs.

In response, plaintiffs filed a responsive pleading containing numerous defenses. Six of these defenses alleged that Norwest's counterclaims were "barred" or "barred or set off" by the breaches that formed the basis for the claims asserted in the complaint. And, in the case of each of these six defenses, this pleading alleged that the claim asserted in the complaint "also constitutes a counterclaim with respect to [Norwest's] claims."

After the parties had engaged in pre-trial discovery, Norwest successfully moved for summary judgment from which plaintiffs appeal.

## I.

Plaintiffs first assert that the trial court erroneously determined that their claims were barred by appropriate statutes of limitations because: (1) none of their claims accrued before their land was foreclosed upon in January 1990; (2) § 13–80–109, C.R.S. (1987 Repl.Vol. 6A), in effect at the time Norwest filed its counterclaims, revived any previously barred claim possessed by plaintiffs and allowed them to assert such a claim in their reply; and (3) Norwest was equitably estopped from relying upon any statute of limitations. We reject each of these contentions.

## A.

In support of its motion for summary judgment, Norwest asserted that each of the claims contained within plaintiffs' complaint was barred by one or more specific statutes

of limitations, which collectively established a limitation period of some two to six years. In addition, in the papers in support of its motion, Norwest outlined the events upon which plaintiffs based each of their claims and provided a table showing the date of each occurrence which it claimed constituted the date upon which each claim accrued. This table reflected that each claim accrued as early as 1984, when plaintiffs' corporate stock was sold, but no later than 1987, when Norwest refused to approve the proposed contract for the sale of the land and failed to provide funds for plaintiffs to prepare a subdivision plat. It concluded, therefore, that plaintiffs were required to institute an action on some claims as early as December 31, 1986, and that no action could have been instituted on any claim later than December 31, 1990. Hence, because plaintiffs' action here was not commenced until September 1991, Norwest concluded that all claims alleged were time-barred.

While plaintiffs heartily contest Norwest's conclusion, they do not suggest that the statutes of limitations relied upon by Norwest are not the applicable statutes.

■ We agree with plaintiffs that a tort claim does not normally accrue until at least some damage has resulted from the wrongdoer's actions. *Martin Marietta Corp. v. Lorenz,* 823 P.2d 100 (Colo.1992). However, once *some* injury has occurred, the statute begins to run, notwithstanding that further injury continues to occur. *See Dove v. Delgado,* 808 P.2d 1270 (Colo.1991).

■ Here, plaintiffs expressly asserted that Norwest improperly sold the corporate stock owned by them in 1984 and that such action was one of the incidents forming the foundation for each of plaintiffs' claims, except for their claim for intentional interference with prospective advantage. The sale of such stock immediately deprived plaintiffs of its value and constituted injury to them, as a matter of law. Hence, under plaintiffs' own pleadings, injury occurred to them, initially, in 1984. *See Palisades National Bank v. Williams,* 816 P.2d 961 (Colo.App.1991).

■ Further, plaintiffs' intentional interference claim was based upon Norwest's re-

fusal to approve the contract to sell their land in late 1987. Again, Norwest's action had the immediate effect of depriving plaintiffs' of the consideration that they would have received pursuant to the proposed contract. For purposes of the statute of limitations for a tort claim, such deprivation constituted injury, as a matter of law. *See Palisades National Bank v. Williams, supra.*

All of plaintiffs' claims, therefore, were barred by either the six-year period or the three-year period, unless there is some other reason why the statutes of limitation should not be applied to these claims.

B.

■ Plaintiffs also assert that, even if their claims had accrued and even if the pertinent statutes of limitations otherwise would have run, § 13–80–109, C.R.S. (1987 Repl.Vol. 6A) authorized them to assert all of their claims, as counterclaims, in this action. We again disagree.

Section 13–80–109 provides that:

> *Except for causes of action arising out of the transaction or occurrence which is the subject matter of the opposing party's claim,* the limitation provisions of this article shall apply to the case of any debt, contract, obligation, injury, or liability alleged by a defending party as a counterclaim or setoff. *A counterclaim or setoff arising out of the transaction or occurrence which is the subject matter of the opposing party's claim* shall be commenced within one year after service of the complaint by the opposing party and not thereafter. (emphasis supplied)

The question presented by plaintiffs' argument here is whether the foregoing statute allows a plaintiff, who has instituted litigation by asserting time-barred claims, to revive those same claims simply by re-pleading them as counterclaims in a reply to a defendant's counterclaim that is compulsory under C.R.C.P. 13(a). We conclude that the statute cannot have this effect.

The language of the pertinent statute makes it clear that its purpose is to allow a party against whom a claim has initially been

asserted to plead a stale claim only in response to the claim asserted against that party and only if it arises out of the same transaction or occurrence, or the same series thereof. *See Ogg v. City of Springfield*, 121 Ill.App.3d 25, 34, 76 Ill.Dec. 531, 537, 458 N.E.2d 1331, 1337 (1984) (similar statute exposes the *"initiating party* to otherwise stale claims"). (emphasis supplied)

Plaintiffs assert, however, that, just as a plaintiff may be exposed to the assertion of a stale claim by initially filing a complaint, a defendant may be exposed to a stale claim by asserting a counterclaim in a responsive pleading. They argue, therefore, that the statute applies to a counterclaim alleged by a plaintiff in a reply to a defendant's counterclaim.

While plaintiff may be correct *generally*, if the claim asserted in such a reply has *already* been pleaded in the plaintiff's complaint that initiated the litigation, it cannot be considered to be a "counterclaim or setoff" within the meaning of the statute.

In support of its argument that the statute should be held to be applicable to plaintiffs' repleaded claims here, plaintiffs assert that, even though the Norwest claims were compulsory counterclaims, the assertion of such counterclaims were inconsistent with its defense based upon the statute of limitations and that, since Norwest voluntarily elected to assert a compulsory counterclaim, it should be held to have waived this inconsistent defense.

This argument, however, is contrary to the express terms of our rules of procedure and their purposes.

C.R.C.P. 12(b) requires that: "[*E* ]*very* defense, in law or in fact, to a claim for relief in *any* pleading . . . *shall* be asserted in a responsive pleading thereto. . . ." (emphasis supplied) That rule is also specific in providing that: "No defense or objection is waived by being joined with one or more other defenses or objection in a responsive pleading. . . ."

Further, C.R.C.P. 13(a) provides that a compulsory counterclaim "shall" be asserted if it is in existence at the time of the filing of the responsive pleading. Failure to assert such a claim bars later action upon it. *Wood v. Jensen*, 41 Colo.App. 301, 585 P.2d 309 (1978).

Given these rule provisions, a defendant's assertion of a compulsory counterclaim cannot be looked upon as a waiver of a defense based upon the statute of limitations. *See Taplett v. Khela*, 60 Wash.App. 751, 807 P.2d 885 (1991) (to hold that asserting a counterclaim waives such defense would impugn rule authorizing assertion of alternative claims or defenses).

Here, therefore, to the extent that plaintiffs' complaint relied upon time-barred claims, § 13–80–109 could not be made applicable to those claims simply by repleading them in response to a compulsory counterclaim that Norwest was required to assert in its answer.

### C.

■ We also reject plaintiffs' contention that Norwest is equitably estopped from relying upon the statute of limitations as a defense.

■ Under appropriate circumstances in which a defendant's wrongful actions have been the cause of a plaintiff's failure to institute a timely action, such a defendant may be estopped from relying upon the resulting delay as a defense to the plaintiff's claim. *See Garrett v. Arrowhead Improvement Ass'n*, 826 P.2d 850 (Colo.1992); *Klamm Shell v. Berg*, 165 Colo. 540, 441 P.2d 10 (1968).

Here, plaintiffs assert that Norwest's filing of objections to plaintiffs' motion in the bankruptcy court "prevented" plaintiffs from filing their claims at an earlier date. Such an assertion must fail for several reasons.

First, plaintiffs have not directed our attention to any statute, regulation, or court decision that prevents a debtor-in-possession in a Chapter 11 business reorganization proceeding from pursuing any existing claims against a third party. And, the motion filed by plaintiffs in the bankruptcy court did not request that court's permission to *sue;* it requested that court's permission to use the assets in the debtor's estate to *pay* the litiga-

tion costs that plaintiffs would incur in the prosecution of the claims involved.

Second, even if we assume that, absent the bankruptcy court's approval thereof, plaintiffs were prevented from pursuing their claims while reorganization proceedings were pending, plaintiffs became subject to such a prohibition only as a result of their *voluntary* action in filing a reorganization petition with that court. *See Overheiser v. Safeway Stores, Inc.,* 814 P.2d 12 (Colo.App.1991).

Finally, the only action by Norwest to prevent plaintiffs' prosecution of their claims against it was to appear in the forum selected by plaintiffs and to oppose the expenditure of estate assets to the prejudice of plaintiffs' creditors. Such opposition was based upon legally appropriate grounds. Indeed, the bankruptcy court determined that Norwest's position was legally sound and denied plaintiff's request. These circumstances provide a court of equity no basis for imposing an estoppel against Norwest. *See Commercial Equity Corp. v. Majestic Savings & Loan Ass'n,* 620 P.2d 56 (Colo.App.1980).

## II.

■ The trial court dismissed plaintiffs' claim that alleged economic duress on alternate grounds. First, relying upon Restatement (Second) of Torts § 871 (1965), it concluded that, while economic duress can be pleaded as an equitable defense to a contract claim, it cannot be affirmatively pleaded in an action at law as a tort claim to collect money damages. Second, it concluded that, even if Colorado law were to recognize such a claim, plaintiffs' claim here would be time-barred, in any case. Because we agree with the court's second reason for dismissal, we need not address its first.

The "economic duress" relied upon by plaintiffs commenced no later than 1987, when the parties executed the workout agreement. And, because that agreement immediately restricted plaintiffs' freedom of action with respect to the sale of their land, they suffered immediate injury from any alleged duress at that time. In addition, they suffered further injury in 1988 when, pursuant to that agreement, Norwest refused to approve plaintiffs' sale of the land.

■ Because any such tort claim would be subject to the two-year statute of limitations set out in § 13–80–102(1)(a), C.R.S. (1987 Repl.Vol. 6A), plaintiffs' claim for economic duress, if such ever existed, was also time-barred.

The judgment is affirmed.

JONES, J., concurs.

TURSI, J.,* specially concurs.

Judge TURSI specially concurring.

I disagree with that part of the majority opinion addressing the effect of § 13–80–109, C.R.S. (1987 Repl.Vol. 6A), and therefore, I write separately.

In 1986, the General Assembly repealed and reenacted article 80, title 13, (Limitations–Personal Actions) and at that time amended the predecessor section to § 13–80–109. The predecessor statute read:

*STATUTE APPLIES TO SETOFFS.* The limitation provisions of this article shall apply to the case of any debt or contract alleged, by way of setoff, on the part of a *defendant.* The time of limitation of such debt shall be computed in like manner as if an action had been commenced therefor at the time when plaintiff's action accrued. (emphasis supplied)

With the amendatory language, as emphasized, § 13–80–109 now reads:

*LIMITATIONS APPLYING TO NON-COMPULSORY COUNTERCLAIMS AND SETOFFS. Except for causes of action arising out of the transaction or occurrence which is the subject matter of the opposing party's claim,* the limitation provisions of this article shall apply to the case of any debt, contract, obligation, injury, or liability alleged by a defending party as a counterclaim or setoff. *A counterclaim or setoff arising out of the transac-*

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1993 Cum.Supp.).

*tion or occurrence which is the subject matter of the opposing party's claim shall be commenced within one year after service of the complaint by the opposing party and not thereafter.*

By these additions, the law in Colorado was brought into line with the majority of jurisdictions which allow the use of stale claims defensively. *Cf. Bernklau v. Stevens,* 150 Colo. 187, 371 P.2d 765 (1962).

It is not disputed that a counterclaim is a claim, *see Transport Clearings of Colorado, Inc. v. Linstedt,* 151 Colo. 166, 376 P.2d 518 (1962), and that a plaintiff may both answer and affirmatively defend in its reply. Thus, the amended version of the statute, which inserts the phrase "the opposing party's claim" for "defendant," effectuates the intent of the drafters of the statute to remove the limitations of article 80 upon any party when faced with a non-stale claim by an opposing party.

By the additions to the predecessor statute, a party with a greater time frame in which to file its claim before the running of the statute of limitations is prevented from waiting until the opposing party's claim becomes stale before instituting an action. Further, since there is little evidence that the facts surrounding the transaction would be unavailable to either party, fairness is achieved by allowing the defensive use of a counterclaim or setoff against either a claim or counterclaim. Thus, it achieves the general equitable purpose from which counterclaims and setoffs evolved.

The use of the word "complaint" creates an apparent contradiction. However, to harmonize the two sentences, I would hold that *complaint* as used in § 13–80–109, which grants up to one year before triggering the rules of civil procedure, further protects a party with stale claims.

The fact that, initially, plaintiffs' claims are subject to the affirmative statute of limitations defense does not destroy the claims, but merely subjects them to procedural bars if, as asserted, they are not otherwise excused. *See Colley v. Rowan,* 71 Colo. 17, 203 P. 669 (1922).

Inasmuch as the parties agree that plaintiffs have causes of action arising out of the transaction or occurrence which is the subject matter of defendant's claim against them, I would hold that the general limitation provisions of article 80, title 13 do not apply to plaintiffs' claims. Section 13–80–109, *supra.* And, in order to give a reasonable construction to § 13–80–109 as written, I would hold that, if an opposing party's claim is raised in either a complaint or as a counterclaim, the statutory right defensively to assert the "stale" claims as counterclaims or setoffs is revived.

However, here, inasmuch as defendant withdrew its counterclaims prior to the ruling on its motion for summary judgment, I would hold that the viability of plaintiffs' stale claims was contingent upon defendant's claims being actively pursued against them.

Therefore, I concur in the result.