Martin STERENBUCH, Plaintiff–Appellant and Cross–Appellee,

v.

E. Warren GOSS, III; Lyle Smith; and Intercontinental Capital Management, LTD, Defendants–Appellees and Cross–Appellants.

No. 10CA1459.

Colorado Court of Appeals, Div. II.

Oct. 13, 2011.

Bland Law Offices, P.C., Richard Bland, Longmont, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Sanderson Law, P.C., David S. Sanderson, Boulder, Colorado, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge DAILEY.

Plaintiff, Martin Sterenbuch, appeals the district court's judgment dismissing his claims for tortious interference with contracts, civil conspiracy, unjust enrichment, and constructive trust against defendants, E. Warren Goss, III, Lyle Smith, and Intercontinental Capital Management, LTD (ICM). Goss, Smith, and ICM cross-appeal the court's judgment dismissing their abuse of process counterclaim. We affirm in part, reverse in part, and remand with directions.

Sterenbuch and Goss are attorneys; Smith and his company, ICM, are self-proclaimed investment fund recovery experts. In 1999, Sterenbuch agreed to represent, on a contingency basis, approximately twenty-five people who, along with himself, had been victimized by a fraudulent investment scheme. By November 1999, however, nine of his clients had terminated their agreements with him and entered into new ones with Smith, who had allegedly disparaged Sterenbuch's abilities. The new agreements were later superseded by contingency fee contracts with Goss.[1] In time, Sterenbuch came to believe that Smith and Goss had been acting together from the start to obtain his clients.

The effort to recover the investment funds was complicated by the federal government's instituting an asset forfeiture case against those funds. On March 16, 2007, however, a consent judgment was entered in the asset forfeiture case. The terms of that judgment provided for the distribution of funds to fraud victims, including those clients represented by Sterenbuch and Goss. As a result of that judgment, Goss, Smith, and ICM

---

1. Under the new contracts, Goss and ICM would    share any attorney fees received.

received $598,710 in fees from Sterenbuch's former clients.

On March 10, 2009, Sterenbuch filed the present action. In response, Goss, Smith, and ICM filed a counterclaim alleging that Sterenbuch's lawsuit was an abuse of process. Each side successfully moved for partial judgment on the pleadings dismissing the other's claims.

The district court ruled that Sterenbuch's claims were time-barred, despite his assertion that he could not have pursued his claims before learning, in March 2007, that his former clients would indeed have a recovery. The court determined that his claims should have been brought within two years of November 1999, when he first became "aware of [the other side's] defamatory statements [about him], the loss of his clients, and the harm to his reputation."

The district court also dismissed the abuse of process claim because Goss, Smith, and ICM failed to plead any facts pertaining to an essential element of that tort, that is, an improper use of legal process. Thus, the district court's rulings resolved all claims in the case.

## I. Standard of Review

■ "Judgment on the pleadings is appropriate when a case's material facts are not in dispute, and 'judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice.'" *Fischer v. City of Colorado Springs,* 260 P.3d 331, 334 (Colo. App.2010) (quoting *City & County of Denver v. Qwest Corp.,* 18 P.3d 748, 754 (Colo.2001)).

■ In considering a motion for judgment on the pleadings, a court must construe the allegations in the pleadings strictly against the moving party, must consider the allegations of the opposing party's pleadings as true, and should not grant the motion unless the pleadings themselves show that the matter can be determined on the pleadings. *Redd Iron, Inc. v. Int'l Sales & Servs. Corp.,* 200 P.3d 1133, 1135 (Colo.App.2008). Entry of judgment on the pleadings is proper only if the material facts are undisputed and the movant is entitled to judgment as a mat-

ter of law. *Hannon Law Firm, LLC v. Melat, Pressman & Higbie, LLP,* —— P.3d ——, ——, 2011 WL 724742 (Colo.App.2011) (*cert. granted* Aug. 29, 2011).

■ We review de novo an order entering judgment on the pleadings. *Redd Iron,* 200 P.3d at 1135.

## II. Sterenbuch's Appeal

Sterenbuch contends that the district court erred in ruling that his claims were, as a matter of law, time-barred. Although we disagree with respect to his tort claims, we agree with respect to his equitable claims.

■ "When a cause of action accrues is a question of law, the formulation of which settles a general rule of law." *Hickman v. N. Sterling Irrigation Dist.,* 748 P.2d 1349, 1350 (Colo.App.1987). Once the rule is settled upon, when a particular claim accrues and whether that claim is time-barred by a statute of limitations ordinarily are questions of fact for a jury to resolve. *See J.A. Balistreri Greenhouses v. Roper Corp.,* 767 P.2d 736, 739 (Colo.App.1988); *Norton v. Leadville Corp.,* 43 Colo.App. 527, 530, 610 P.2d 1348, 1350 (1979). However, when the material facts are undisputed and reasonable persons could not disagree about their import, these questions may be decided as a matter of law. *See Liscio v. Pinson,* 83 P.3d 1149, 1153 (Colo.App.2003); *Winkler v. Rocky Mountain Conference of United Methodist Church,* 923 P.2d 152, 159 (Colo.App.1995); *see also Nelson v. State Farm Mut. Auto. Ins. Co.,* 419 F.3d 1117, 1119 (10th Cir.2005) ("Whether a court properly applied a statute of limitations and the date a statute of limitations accrues under undisputed facts are questions of law we review de novo.").

## A. Tort Claims

The applicable statute of limitations for a general tort action requires commencement of a suit "within two years after the cause of action accrues, and not thereafter." § 13–80–102(1)(a), C.R.S.2011; *see Build It & They Will Drink, Inc. v. Strauch,* 253 P.3d 302, 305 n. 1 (Colo.2011).

As applicable here, a cause of action accrues "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." § 13–80–108(1), C.R.S.2011.

### 1. Tortious Interference with Contractual Relations

On appeal, Sterenbuch argues that his claim for tortious interference with contractual relations is not time-barred because, due to the contingent nature of the contracts with his former clients, he could not have suffered, much less known of, any injury before March 16, 2007, when it was determined that his former clients would recover their lost funds. As his complaint was filed within two years of that date, that is, on March 10, 2009, he asserts that it was timely. We disagree.

Sterenbuch relies on *Miller v. Armstrong World Industries, Inc.*, 817 P.2d 111 (Colo. 1991), in which the supreme court held that "[a] claim for relief 'does not accrue until the plaintiff knows, or should know, in the exercise of reasonable diligence, all material facts essential to show the elements of that cause of action.'" *Id.* at 113 (quoting *City of Aurora v. Bechtel Corp.*, 599 F.2d 382, 389 (10th Cir.1979)); *see also Hannon,* —— P.3d at —— ("A cause of action generally accrues 'when a suit may be maintained thereon.'") (quoting *Jones v. Cox*, 828 P.2d 218, 224 (Colo.1992)). He argues that, because he could not have known with any degree of certainty the facts relating to an essential element of his claim (i.e., damages)[2] until March 2007, his claim could not have accrued before that time. We are not persuaded.

■ "[A]n injury is different from the damages that flow from the injury.... [D]amages do not need to be known before accrual of a claim." *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 147 n. 8 (Colo. 2007); *see Broker House Int'l, Ltd. v. Bendelow*, 952 P.2d 860, 863 (Colo.App.1998) (uncertainty as to the precise extent of damage neither precludes the filing of a suit nor delays the accrual of a claim for purposes of the statute of limitations); *see also Duell v. United Bank*, 892 P.2d 336, 340 (Colo.App. 1994) ("[O]nce *some* injury has occurred, the statute [of limitations] begins to run, notwithstanding that further injury continues to occur.").

Courts in other jurisdictions recognize that an action for tortious interference with a contract accrues when the injury from the alleged interference occurred, that is, when the interference succeeded. *Hroch v. Farmland Indus., Inc.*, 4 Neb.App. 709, 548 N.W.2d 367, 370 (1996); *see also Scott v. City of New Orleans*, 888 So.2d 318, 320 (La.Ct. App.2004) (cause of action for tortious interference with contract accrued from the date that the contract was terminated); *Morrow v. Reminger & Reminger Co.*, 183 Ohio App.3d 40, 915 N.E.2d 696, 712 (2009) (a claim of tortious interference with contract arises when one party to a contract is induced to breach the contract).

This rule has been applied even where, as here, the contract breached was a contingency fee contract. In *Trembath v. Digardi*, 43 Cal.App.3d 834, 118 Cal.Rptr. 124, 125 (1974), the court rejected an attorney's assertion that his tortious interference action for another's inducement of his client to breach a contingent contract did not accrue until the client's claim was successful. In doing so, the court distinguished between the attorney's claim for breach of contract against his client and his tortious interference claim against the interfering defendants. *Id.* at 125–26. It held that the claim against the client—which sounded in contract—did not accrue until the client recovered in order to "prevent 'a disaster to the client and a windfall to the attorney.'" *Id.* at 126 (quoting *Brown v. Connolly*, 2 Cal. App.3d 867, 83 Cal.Rptr. 158, 160 (1969)). However, the court held that because "[n]o such consideration favor[ed] a third party ... who tortiously induce[d] a client to breach a contingent fee contract," the claim against the defendants—which sounded in tort—was "distinct from the contract right

---

**2.** The elements of the tort of intentional interference with contractual relations are set out in, among other cases, *Lutfi v. Brighton Community Hospital Ass'n*, 40 P.3d 51, 58 (Colo.App.2001), and *Galleria Towers, Inc. v. Crump Warren & Sommer, Inc.*, 831 P.2d 908, 912 (Colo.App. 1991).

... and ... accrue[d], as would any other tort action for inducement of breach of contract, no later than the date of the breach." *Id.; but see Pelagatti v. Cohen*, 370 Pa.Super. 422, 536 A.2d 1337, 1343 (1987) (the plaintiff's claim that he suffered loss of a contingent fee in a case decided in his client's favor was premature as a matter of law until judgment became final in that case).

Here, although the contingent nature of Sterenbuch's contracts may have left the precise extent of injury or damage uncertain, the fact of injury or damage was evident as early as November 1999, when (1) he lost his clients and, with them, the opportunity to receive a large payment if those clients recovered their funds, *see Hein Enters., Ltd. v. San Francisco Real Estate Investors*, 720 P.2d 975, 981 (Colo.App.1985) ("Loss of business advantage or opportunity can properly be recovered under a theory of intentional interference with contractual relationship. These damages may include loss of profits and chances for gain") (citation omitted); and (2) as he alleged in his complaint, Smith's defamatory statements "caused harm to [his] professional reputation." *See* Restatement (Second) of Torts § 774A(1)(c) (listing, as recoverable . in interference with contract cases, damages for "emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference"); *Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112, 1121–22 (Colo.1990) (citing, with approval, section 774A as defining the measure of damages in an interference with contract case, and holding that emotional distress damages are awardable even in the absence of any other type of damages).

Although, in 1999, Sterenbuch was not able to prove the exact amount of damages for the first injury, in terms of lost contingent fees, he could have provided a reasonable estimate of his damages by presenting expert testimony establishing what likely would have transpired (and how much he likely would have recovered) had Goss and Smith not interfered with his relationship with his clients. *See Tull v. Gundersons, Inc.*, 709 P.2d 940, 943, 945 (Colo.1985) ("[a]lthough an award of damages cannot be based on mere speculation ..., once the fact of damage has been established with the requisite degree of certainty," i.e., by a preponderance of evidence, "uncertainty as to the amount of damages will not bar recovery": proof of a fair and reasonable estimate of the amount of damages will suffice); *cf. Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C.*, 179 N.J. 343, 845 A.2d 602, 613 (2004) (in a legal malpractice case, plaintiff can prove damages "through the use of expert testimony as to what as a matter of reasonable probability would have transpired") (quoting *Lieberman v. Emp'rs Ins.*, 84 N.J. 325, 419 A.2d 417, 427 (1980)).

For these reasons, consistent with *Trembath* and other authorities cited above, we conclude that, under section 13–80–108(1), Sterenbuch's tortious interference with contract claim accrued when he knew or should have known that Smith had improperly induced his clients to terminate their contracts with him. According to his complaint, he was aware in November 1999 that Smith had induced, through defamatory statements intended to harm Sterenbuch's business interests, nine clients to terminate their agreements with him. Because Sterenbuch knew or should have known that he had been injured in some manner, and the cause of that injury, as of November 1999, his claim accrued then, expired by November 2001, and was barred long before he filed his complaint in 2009.

Our decision today comports with the purposes of underlying statutes of limitations, that is, of "discourag[ing] unnecessary delay and forestall[ing] prosecution of stale claims." *Lake Canal Reservoir Co. v. Beethe*, 227 P.3d 882, 886 (Colo.2010) (quoting *Jones*, 828 P.2d at 224). These purposes would be defeated if plaintiffs were allowed to delay filing tortious interference claims until, as was the case here, years later when a contingency is resolved, thus requiring parties to litigate claims arising out of events which occurred long ago.

In reaching our decision, we necessarily reject Sterenbuch's reliance on *Vanderloop v. Progressive Casualty Insurance Co.*, 769 F.Supp. 1172 (D.Colo.1991). In *Vanderloop*,

the plaintiff was sued and the defendant, his insurer, failed to settle the claim within his policy limit. After a judgment in excess of the policy limit was later entered against him, the plaintiff filed a bad faith action against the insurer. The trial court rejected the insurer's assertion that the claim was barred by the statute of limitations because it accrued upon the insurer's refusal to settle; according to the court, when "the economic injury alleged is the actual imposition of an excess liability judgment on the insured, the harm or damages element of the bad faith tort claim necessarily remains uncertain and speculative until final judgment on appeal either establishes that exposure or dissolves any liability." *Id.* at 1175.

In our view, *Vanderloop* is distinguishable from the instant case. There, when the insurer refused to settle, the plaintiff had suffered no injury. Rather, the injury occurred when a judgment in excess of his policy limits was entered. In contrast, here, when Goss and Smith induced Sterenbuch's clients to breach their agreements, Sterenbuch suffered two injuries: the loss of his clients (and with them, the opportunity of receiving a fee) and the harm to his reputation. As these injuries were ascertainable at the time of Goss and Smith's interference, unlike in *Vanderloop*, they did not remain uncertain or speculative pending the resolution of the action to recover the lost funds. *Cf. Brodeur*, 169 P.3d at 148 (distinguishing *Vanderloop* on similar grounds).

### 2. Civil Conspiracy

We likewise reject Sterenbuch's contention that the district court erred in dismissing his civil conspiracy claim.

Sterenbuch argues that, in failing to separately address the limitations issue with respect to his civil conspiracy claim, the district court overlooked two matters which would have led it to reach a different conclusion: (1) the complaint did not allege when he knew or should have known of the conspiracy between Smith and Goss; and (2) under the common law "last overt act" doctrine, the limitations period does not begin to run on a civil conspiracy until "the 'last overt act' pursuant to the conspiracy has been completed."

*Wyatt v. Union Mortg. Co.*, 24 Cal.3d 773, 157 Cal.Rptr. 392, 598 P.2d 45, 53 (1979).

Sterenbuch did not, however, raise either matter in the district court, and arguments not presented to or ruled on by the district court cannot be raised for the first time on appeal. *See, e.g., Crum v. April Corp.*, 62 P.3d 1039, 1042 (Colo.App.2002).

Moreover, Sterenbuch's arguments are unavailing because of the very nature of a civil conspiracy claim. "[Civil] conspiracy is a derivative cause of action...." *Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo.App.2003). "[T]he essence of a civil conspiracy claim is not the conspiracy itself, but the actual damages resulting from the acts done in furtherance of the conspiracy." *Resolution Trust Corp. v. Heiserman*, 898 P.2d 1049, 1055 (Colo.1995); *accord Farmland Indus. v. Frazier–Parrott Commodities, Inc.*, 871 F.2d 1402, 1409 (8th Cir.1989) ("[T]he 'doctrine of civil conspiracy extends liability for tort ... to persons other than the actual wrongdoer ... but it is the acts causing damage to the plaintiff that give rise to liability for damages, not the conspiracy itself.'") (quoting *Simpson v. Weeks*, 570 F.2d 240, 242 (8th Cir.1978)).

In the end, it is wrongful acts, not the mere existence or continuation of a conspiracy, that injure the plaintiff. *Cf. Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir.1986) (under "last overt act" doctrine, injury and damage flow from overt acts, not from the mere continuance of a conspiracy). Consequently, the failure to discover all (or other) participants in a conspiracy does not delay accrual of the cause of action: once a party is aware of an injury and the cause thereof (i.e., in this context, *a* wrongdoer), the party "'normally' has 'sufficient opportunity,' within the applicable limitations period,' 'to discover the identity'" of other defendants. *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal.4th 797, 27 Cal.Rptr.3d 661, 110 P.3d 914, 920 (2005) (applying statute of limitations "discovery" rule to product liability claim) (quoting *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 87 Cal.Rptr.2d 453, 981 P.2d 79, 89 (1999)).

Because "the elements [of] a civil conspiracy claim require that the underlying acts be unlawful and create an independent cause of action," *Double Oak*, 97 P.3d at 146, "[c]ivil conspiracy claims ... share a statute of limitations with the underlying tort," and their "accrual dates are linked to the accrual date[s] of the underlying tort[s]." *Prince George's County v. Longtin*, 419 Md. 450, 19 A.3d 859, 877 & n. 22 (2011); *see Filmservice Labs., Inc. v. Harvey Bernhard Enters., Inc.*, 208 Cal.App.3d 1297, 256 Cal.Rptr. 735, 742 (1989) ("[N]o cause of action exists for conspiracy, per se. Whether or not a cause of action for conspiracy is timely must be determined by reference to the statute of limitations applicable to the underlying cause of action. In this case the underlying cause of action is ... time-barred. That being the case we find the ... cause of action for conspiracy is also time-barred.") (citations omitted); *Meyer Land & Cattle Co. v. Lincoln County Conservation Dist.*, 29 Kan. App.2d 746, 31 P.3d 970, 977 (2001) (recognizing that, although civil conspiracy is a separate, actionable tort, a conspiracy claim is barred where the underlying tort is barred by the applicable statute of limitations); *Schlotthauer v. Sanders*, 153 A.D.2d 731, 545 N.Y.S.2d 197, 199 (N.Y.App.Div.1989) ("because conspiracy is not an independent tort, ... [it] is time-barred when the substantive tort underlying it is time-barred"); [3] *see also Draper v. DeFrenchi–Gordineer*, — P.3d —, —, 2011 WL 3851738 (Colo.App.2011) ("derivative" claims are subject to the same defenses available to "underlying" claims).

Under this line of reasoning, because, as we have found, Sterenbuch's underlying interference with contract claim is time-barred, so too is his conspiracy claim.

We reach the same result even if, as Sterenbuch argues, we apply the "last overt act" doctrine. Under variations of this doctrine, a civil conspiracy claim accrues "from the date of discovery of 'the last overt act done in furtherance of the conspiracy, or from the last overt act causing damage to the plaintiff, or from the date of each overt act causing damage.'" *See Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255, 273 n. 19 (2009) (quoting 16 Am.Jur.2d, *Conspiracy* § 65 (2009)). Under any of these variations, however—and consistent with the essence of a civil conspiracy claim—the "last overt act" relied upon would have to be a "wrongful" one. *See Thompson v. Cal. Fair Plan Ass'n*, 221 Cal.App.3d 760, 270 Cal.Rptr. 590, 594 (1990).

Here, Sterenbuch failed to allege any "wrongful" act by Goss, Smith, or ICM within two years of the March 2009 filing. Indeed, the only "wrongful" acts alleged in the complaint were those that allegedly took place in 1999, when Smith, through comments defamatory of Sterenbuch, induced Sterenbuch's clients to terminate their contracts with him. Consequently, even under this analysis, the applicable two-year limitations period commenced in 1999 and expired long before the present action was filed in 2009.

### B. Equitable Claims

Equitable claims—such as those made here for unjust enrichment and a constructive trust—are "technically subject to an equitable laches rather than a legal statute of limitations analysis." *See Interbank Invs., L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1230 (Colo.App.2000). However, absent extraordinary circumstances, "a court 'will usually grant or withhold relief [by] analogy to the statute of limitations relating to actions at law of like character.'" *Id.*

---

**3.** In Colorado, civil conspiracy has been characterized (with little or no explanation) as an "independent" tort. *See Resolution Trust*, 898 P.2d at 1056; *Double Oak*, 97 P.3d at 148. Given its "derivative" nature, *see, e.g., Double Oak*, 97 P.3d at 146, however, that characterization is seemingly anomalous. *See generally Ind. Patient's Comp. Fund v. Winkle*, 863 N.E.2d 1, 6 (Ind.Ct. App.2007) ("A cause of action is derivative if it may be brought only where a separate, related claim is actionable. The derivative claimant must prove all the elements of the related tort in order to recover.... A cause of action is independent [rather than derivative] if it may be brought irrespective of the merits of an accompanying tort.") (citations omitted); *see also* 4 James Lockhart, *Causes of Action* § 2, at 517 (2d ed. 1994) ("In most jurisdictions, civil conspiracy is not an independent tort.").

(quoting *Brooks v. Bank of Boulder*, 911 F.Supp. 470, 477 (D.Colo.1996)).

■ Because a constructive trust, being a remedy to prevent unjust enrichment, *Lawry v. Palm*, 192 P.3d 550, 562 (Colo.App.2008), is not to be pled as a separate cause of action, *Bryant v. Community Choice Credit Union*, 160 P.3d 266, 276 (Colo.App.2007), we analyze only the timeliness of Sterenbuch's unjust enrichment claim. And because unjust enrichment is a form of relief in quasi-contract or contract implied in law, *Salzman v. Bachrach*, 996 P.2d 1263, 1265 (Colo.2000), the time within which to assert such a claim ordinarily is assessed under the three-year statute of limitations for contract actions. *See* § 13–80–101(1)(a), C.R.S.2011; *Hannon*, —— P.3d at —— (applying three-year period to analogous quantum meruit claim).[4]

■ A claim of unjust enrichment accrues "when a person discovers, or through the exercise of reasonable diligence should discover, that all elements of the claim are present." *Hannon*, —— P.3d at ——.

"The claim of unjust enrichment is a judicially-created remedy designed to undo the benefit to one party that comes at the unfair detriment of another. Unjust enrichment is based on principles commonly associated with restitution." *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo.2008) (citation omitted).

■ A party claiming unjust enrichment must prove that (1) the defendant received a benefit, (2) at the plaintiff's expense, (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation. *Id.*

■ "If the elements of unjust enrichment are established, the party who has received the benefit is ordinarily required to make restitution in the amount of enrichment received. That amount is often, but not always, coextensive with the other party's loss. Where the amount of the recovery may rea-

sonably be measured in different ways, the choice is within the discretion of the trial court." *Redd Iron*, 200 P.3d at 1136.

In his unjust enrichment claim, Sterenbuch alleged:

> In light of the Defendants' unlawful and improper actions in inducing Plaintiff's clients to abrogate their agreements with Plaintiff ... and the lack of any contribution by the Defendants toward the successful outcome obtained in the ... asset forfeiture case or to the recovery of the victims' funds, Defendants have been unjustly enriched to the extent of the fees received by them in connection with said asset forfeiture case.

The first part of Sterenbuch's unjust enrichment claim appears to be nothing more than his tortious interference with contracts claim repackaged under another name. However, he also alleged that he, not Goss or Smith, was responsible for the success enjoyed by his former clients, and, consequently, by Goss and Smith. In support of this portion of his claim, Sterenbuch alleged:

- Goss and Smith recovered funds for their clients, including Sterenbuch's former clients, "only by taking unfair advantage of [his] efforts"; and

- Goss and Smith "contributed nothing—not time, effort, knowledge, or funds—to th[e] costly effort [to recover the clients' money], but ... they and their clients benefited handsomely from the work done by [Sterenbuch] and his co-counsel."

These allegations are different in kind from those necessary for a tortious interference with contract claim. We assume, for purposes of this appeal only, that the allegations sufficed to state a claim upon which relief ultimately could be granted, and assess only whether a claim for unjust enrichment was timely brought here.

---

4. Quantum meruit is a form of unjust enrichment. *See Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 444 (Colo.2000) (doctrine of quantum meruit is also termed quasi-contract or unjust enrichment); *see also Hannon*, —— P.3d at —— ("In Colorado, quantum meruit is synonymous with the doctrines of quasi-contract and

unjust enrichment."); *but cf. Portercare Adventist Health Sys. v. Lego*, —— P.3d ——, ——, 2010 WL 3584394 (Colo.App.2010) (*cert. granted* Mar. 24, 2011) (stating that "quantum meruit has two distinct branches—contract implied in fact and unjust enrichment").

In *Hannon*, a division of this court considered the timeliness of an unjust enrichment (in the form of quantum meruit) claim for attorney fees brought by an attorney against other attorneys. The attorneys had entered into a fee-sharing agreement with respect to a case in which they were representing clients on a contingency basis, and eventually, the plaintiff-attorney withdrew from the case. Following the successful conclusion of the underlying case, he sued the attorneys remaining on the case in quantum meruit because the fee-sharing agreement had not addressed the issue of fees or compensation for withdrawing attorneys.

The trial court in *Hannon* had held that the plaintiff-attorney's claims accrued, at the latest, on the last day that he conferred the benefit of his legal services upon the remaining lawyers and withdrew from the case. The division of this court disagreed, holding that the quantum meruit claim of a lawyer who withdraws from representing clients on a contingency basis accrues, if at all, only upon the former clients' recovery in the underlying litigation. *Hannon*, —— P.3d at ——. Only at that point, the division said, would the retention by the remaining lawyers of the benefit of any previously conferred legal services be unjust:

> [All the lawyers] were ... aware of the possibility that they would receive no compensation at all for their legal services if there were no recovery in the underlying litigation. Given these intentions and expectations, an attorney's retention of the benefit of legal services provided by a withdrawing attorney cannot be unjust if no recovery ever occurs in the underlying litigation. The withdrawing attorney, at the time the benefit is conferred on the other attorneys, expects that he or she will not receive any compensation if the contingency does not occur. It therefore could not be unjust for the remaining attorneys to retain the benefit conferred without paying for it if the contingency never comes to fruition.
>
> . . . .
>
> [E]ven if an attorney has good cause to withdraw, it would still not be unjust for any remaining attorneys to retain the ben-

efit of the withdrawing attorney's legal services where no recovery occurs in the underlying litigation. Therefore, whether the attorney had good cause to withdraw may affect the attorney's ultimate ability to recover on the merits, but it is not determinative in deciding when a claim accrues. The claim can only accrue, if it accrues at all, when recovery occurs in the underlying litigation.

*Id.* at ——.

An analogous situation confronts us in this case because Sterenbuch provided services which, he asserts, were beneficial to his former clients and, indirectly, to Goss and Smith. Under *Hannon*, any retention by Goss and Smith of the benefits of Sterenbuch's legal services could become unjust only upon a client's recovery in a contingency fee case. That being so, Sterenbuch's unjust enrichment claim could not have accrued before March 16, 2007, and, consequently, his filing of that claim on March 9, 2009 was well within the applicable three-year period of time. Because the district court erroneously held otherwise, the claim must be reinstated for further proceedings.

### III. Goss, Smith, and ICM's Cross–Appeal

Goss, Smith, and ICM contend that the district court erred in dismissing their abuse of process counterclaim, or, in the alternative, that the court should have allowed them to amend the counterclaim to correct any defects in it. We are not persuaded.

#### A. Abuse of Process

A prima facie case for abuse of process includes proof of (1) an ulterior purpose in the use of judicial proceedings; (2) willful actions by a defendant in the use of process that are not proper in the regular conduct of a proceeding; and (3) damages. *See Hewitt v. Rice*, 154 P.3d 408, 414 (Colo. 2007); *Trask v. Nozisko*, 134 P.3d 544, 553 (Colo.App.2006).

However, when the process alleged to have been abused entails, as here, the very filing of a lawsuit, an additional showing is required. The party asserting the abuse of process claim also has to show that the

other party's claim is "devoid of factual support or if supportable in fact, [has] no cognizable basis in law." *Yadon v. Lowry*, 126 P.3d 332, 337 (Colo. App.2005) (quoting *Ware v. McCutchen*, 784 P.2d 846, 848 (Colo.App.1989)); *see Protect Our Mountain Env't, Inc. v. Dist. Court*, 677 P.2d 1361, 1365, 1369 (Colo.1984) (additional showing necessary to protect a person's First Amendment right to petition the government by filing a lawsuit).

▮▮▮▮▮ The essential element of an abuse of process claim is the use of a legal proceeding in an improper manner; therefore, an improper *use* of the process must be established. *Trask*, 134 P.3d at 554; *see also Yadon*, 126 P.3d at 337 ("The essence of the tort of abuse of process is the use of a legal proceeding primarily to accomplish a purpose that the proceeding was not designed to achieve."). "If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse, even if the plaintiff had an ulterior motive in bringing the action or if he knowingly brought suit upon an unfounded claim." *James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo.App.1994) (quoting *Inst. for Prof'l Dev. v. Regis Coll.*, 536 F.Supp. 632, 635 (D.Colo. 1982)).

▮▮▮ Here, Goss, Smith, and ICM alleged only:

- "The principal reason for plaintiff's actions was other than to enforce any rights or claims plaintiff lawfully might have against defendants because plaintiff has no rights or lawful claims against these defendants"; and

- Sterenbuch used "this lawsuit as an attempt to harass, embarrass, damage, burden and wrongfully obtain monies from defendants."

These allegations do not refer to an improper use of process, but rather, to improper purposes in bringing the action. *See James H. Moore & Assocs.*, 892 P.2d at 373

(ulterior motive may be inferred from the wrongful use of the process, but the wrongful use may not be inferred from the motive). Because Goss, Smith, and ICM failed to plead facts which show that Sterenbuch initiated the lawsuit "primarily to accomplish a purpose that the proceeding was not designed to achieve," we conclude that the district court properly held that the counterclaim failed to allege a cause of action for abuse of process.

### B. Amendment of Counterclaim

In response to Sterenbuch's motion for judgment on the pleadings, Goss, Smith, and ICM alternatively requested—in two repetitive and cursory sentences—leave to file an amended counterclaim within fourteen days.[5] They did not, then or later, proffer a proposed amendment or any reason for allowing an amendment at that point in the case. Nor did they seek reconsideration of the court's denial of their request to amend the counterclaim.

The district court denied Goss, Smith, and ICM's request to amend because, in its view, "there ha[d] been ample time and opportunity for Defendant[s] to amend [their] counterclaim with facts that have come forward in discovery."

▮▮▮▮ C.R.C.P. 15(a) provides that, where, as here, a responsive pleading has been filed, "a party may amend his pleading only by leave of court or by written consent of the adverse party[,] and leave shall be freely given when justice so requires." Although the rule reflects a liberal policy of allowing amendment and encouraging trial courts to look favorably on requests to amend pleadings, *see Liscio*, 83 P.3d at 1153–54, this lenient policy is not without limits. *Akin v. Four Corners Encampment*, 179 P.3d 139, 146 (Colo.App.2007). "[L]eave to amend is not to be granted automatically," *Varner v. Dist. Court*, 618 P.2d 1388, 1390 (Colo.1980), and it "may be denied where, for

**5.** Near the end of their response, Goss, Smith, and ICM stated, "[T]o the extent the court agrees with [Sterenbuch's] motion [for partial judgment on the pleadings], defendants seek[ ] leave to file and serve an amended counterclaim within 14 days thereof." And they concluded the response by saying, "Wherefore, defendants request that plaintiff's motion be denied and alternatively, leave to file and serve an amended counterclaim within 14 days thereof, as appropriate."

example, the moving party has unduly delayed in seeking the amendment." *Akin,* 179 P.3d at 146.[6]

A district court's denial of a motion to amend is reviewed for abuse of discretion. *Cody Park Prop. Owners' Ass'n v. Harder,* 251 P.3d 1, 5 (Colo.App.2009). A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair. *Id.*

In *Benton v. Adams,* 56 P.3d 81, 88 (Colo. 2002), the supreme court held that a party's requested amendment was not subject to denial on grounds of undue delay because the case was in an "embryonic stage," that is, no case management order had been entered, the parties had not commenced discovery, mandatory disclosures under C.R.C.P. 26 were not yet due, and no trial date had been set. Significantly, however, the court noted:

> If [the party] had sought the amendments outside of case management order timelines, undue delay justifying denial of leave to amend might have resulted.... Parties should join issues and other parties needed for just and efficient resolution of the case as early as practicable in the litigation, so that a case may proceed expeditiously to trial or settlement.

*Id.*

In the present case, by the time Goss, Smith, and ICM requested leave to amend their counterclaim, the case had been at issue for over eight months, a trial management order had been entered,[7] discovery had commenced, the parties had submitted C.R.C.P. 26 mandatory disclosures, and a trial date had been set.

Further, Goss, Smith, and ICM did not attempt to (1) allege additional facts that would support the abuse of process claim, *see Non–Linear Trading Co. v. Braddis Associates, Inc.,* 243 A.D.2d 107, 675 N.Y.S.2d 5, 12 (1998) (motion seeking leave to amend pleadings requires the proponent to allege facts legally sufficient to support its proposed pleading); *Red Cliffs Corner, LLC v. J.J.*

*Hunan, Inc.,* 219 P.3d 619, 628 (Utah Ct. App.2009) (trial court properly denied the defendant's motion to amend where, among other things, it failed to set forth with any particularity the grounds for the motion); or (2) express any reason for failing to assert an amended claim earlier, *see Sandoval v. Archdiocese of Denver,* 8 P.3d 598, 605 (Colo.App. 2000) (moving party bears the burden of demonstrating that lack of knowledge, mistake, inadvertence, or other reason prevented bringing the amended claim earlier).

Under the circumstances, we perceive no abuse of discretion in the district court's denial of Goss, Smith, and ICM's cursory request to amend. *Cf. Benton,* 56 P.3d at 87–89; *see Pallottino v. City of Rio Rancho,* 31 F.3d 1023, 1027 (10th Cir.1994) (court has often found untimeliness alone a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay), *cited with approval in Kaiser v. Bowlen,* 200 P.3d 1098, 1105 (Colo.App.2008); *see also Ginsburg v. InBev NV/SA,* 623 F.3d 1229, 1236 (8th Cir.2010) (upholding denial of request for leave to amend where request was first made in reply to motion for judgment on the pleadings and was unaccompanied by either a proposed amended complaint or an explanation of what amendments would be made); *King ex rel. Cephalon Inc. v. Baldino,* 409 Fed.Appx. 535, 539 (3d Cir.2010) (upholding denial of plaintiff's request to amend where it comprised only one sentence in the response to a motion for judgment on the pleadings and was unaccompanied by either an amended complaint or an explanation how an amendment would cure the defects in his complaint).

In so concluding, we necessarily reject Goss, Smith, and ICM's argument that the district court overlooked their inability to obtain more than nominal discovery regarding the abuse of process claim. We do so because Goss, Smith, and ICM never assert-

---

6. A trial court may also deny leave to amend on grounds of bad faith, dilatory motive, repeated failure to cure deficiencies in the pleadings via prior amendments, undue prejudice to the opposing party, and futility of amendment. *Benton v. Adams,* 56 P.3d 81, 86 (Colo.2002).

7. Although no trial management order appears in the record, we infer its existence from the presence in the record of a motion (which was granted) to modify it.

ed before the district court that they would earlier (or even then could) have amended their counterclaim if they had been allowed to undertake further discovery. *See Crum,* 62 P.3d at 1042 (arguments not presented to or ruled on by the district court cannot be raised for the first time on appeal).[8]

That part of the judgment dismissing Sterenbuch's unjust enrichment claim is reversed, and the case is remanded to the district court with directions to reinstate that claim and conduct further proceedings thereon. In all other respects, the court's judgment is affirmed.

Judge WEBB concurs.

Judge CASEBOLT specially concurs.

Judge CASEBOLT specially concurring.

I concur in the result reached by the majority. In my view, however, the majority reaches issues that we need not address given the record here.

As the majority correctly notes, the applicable statute of limitations for a general tort action requires commencement of a suit "within two years after the cause of action accrues, and not thereafter," section 13–80–102(1)(a), C.R.S.2011; *see Build It & They Will Drink, Inc. v. Strauch,* 253 P.3d 302, 305 n. 1 (Colo.2011); and a cause of action accrues "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." § 13–80–108(1), C.R.S.2011.

Further, again as the majority correctly notes, "once *some* injury has occurred, the statute [of limitations] begins to run, notwithstanding that further injury continues to occur." *Duell v. United Bank,* 892 P.2d 336, 340 (Colo.App.1994).

Here, Sterenbuch alleged in his complaint, as pertinent:

6. In or about November 1999, Defendant Smith ... induced nine of Plaintiff's clients—by means of false representations and malicious, defamatory statements about Plaintiff ... and the publication of false, derogatory matter intended to harm Plaintiff's business interests—to terminate their agreements with Plaintiff.

. . . .

9. Defendants induced Plaintiff's clients to abrogate their agreements with Plaintiff ... by means of various misrepresentations concerning the recovery of those clients' funds, and also by means of false and defamatory statements concerning Plaintiff and his co-counsel, e.g. that Plaintiff and his co-counsel were secretly representing the fraudsters.

. . . .

10. Those defamatory statements caused harm to Plaintiff's professional reputation. . . .

Based on these allegations alone, which we must construe as being true, *see Redd Iron, Inc. v. Int'l Sales & Servs. Corp.,* 200 P.3d 1133, 1135 (Colo.App.2008), I conclude as a matter of law that Sterenbuch knew he had sustained, or reasonably should have known he had sustained, some injury more than two years before March 10, 2009, when he filed his action for tortious interference. Accordingly, Sterenbuch's tortious interference with contract claim is time barred.

In light of this conclusion, I would not reach or discuss whether Sterenbuch also sustained some injury because he "lost his clients and, with them, the opportunity to receive a large payment if those clients recovered their funds." For the same reasons, I think it unnecessary to hold that the loss of contingent fee clients is per se an injury that triggers the commencement of the statute of limitations for tortious interference, as I read the majority's decision to state.

Accordingly, I specially concur.

---

8. In addition, the argument is inconsistent with Goss, Smith, and ICM's claimed ability in the district court to file an amended counterclaim within fourteen days of an adverse ruling on Sterenbuch's motion for partial judgment on the pleadings.